# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 2 C 8190 | DATE | 7/31/2003 |
| CASE TITLE | Dredia Ross vs. Midland Management Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: The defendant's motion to dismiss [18-1] is granted in part and denied in part.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | _ number of notices | |
| | Notices mailed by judge's staff. | AUG 0 1 2003 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TSA | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

| | |
|---|---|
| DREDIA ROSS, individually and as parent, guardian and next friend of Joshua, Garriet, and Chelsey Ross, and on behalf of all others similarly situated <br><br> Plaintiffs, <br><br> v. <br><br> MIDLAND MANAGEMENT COMPANY, WEST SUBURBAN BANK OF LOMBARD, and KENNETH RINGBLOOM, <br><br> Defendants. | **DOCKETED** <br> AUG 0 1 2003 <br><br> No. 02 C 8190 <br><br> Wayne R. Andersen <br> District Judge |

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the motion of defendants Midland Management Company, West Suburban Bank of Lombard and Kenneth Ringbloom to dismiss the plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

Plaintiff Dredia Ross is currently a tenant at 1360 Fourth Street ("Harbor Village Apartments"), Aurora, Illinois, which is owned by Defendant West Suburban Bank of Lombard as Trustee. The Harbor Village Apartments are populated mostly by low-income African-American females with children. The apartment complex is operated by Defendant Midland Management Company ("Midland"), an Illinois corporation that receives federal funds from the United States Department of Housing and Urban Development ("HUD") in connection with

providing assisted low rent housing. Prior to and since about 1990, Plaintiff has complained to the Defendants about the unsafe conditions in her unit including such things as poor air quality, mold accumulation and unclean water filtration. Plaintiff alleges that Defendants were aware of the complaints and had the ability to remedy the problems but intentionally refused to address her concerns. In so doing, Ross asserts that the Defendants violated the United States Housing Act of 1937 ("USHA"), the Fair Housing Act ("FHA"), 42 U.S.C. § 2000d of the Civil Rights Act of 1964 ("Title VI") and 42 U.S.C. § 1982 (Section 1982).

On November 12, 2002, Plaintiff filed a complaint asserting seven counts: 1) violation of federal civil rights under the FHA, USHA, Title VI and Section 1982; 2) negligence; 3) preliminary injunctive relief from unlawful discrimination and destruction of evidence; 4) willful and wanton conduct; 5) nuisance; 6) abnormally dangerous and ultra-hazardous activity; and 7) retaliatory eviction. In response, the Defendants, on December 23, 2002, filed a motion to dismiss on two grounds. Primarily, Defendants allege that the Plaintiff has failed to establish subject matter jurisdiction because the federal statutes relied upon do not provide a private right of action or a federally enforceable warranty of habitability. Because the Defendants contend there is no subject matter jurisdiction, they also request that the Court decline to exercise supplemental jurisdiction and dismiss the state law claims of negligence, willful and wanton conduct and nuisance. Secondly, Defendants assert that Plaintiff has failed to state claims for a violation of federal civil rights, preliminary injunctive relief, abnormally dangerous and ultra hazardous activity and retaliatory eviction. In conjunction with this allegation, the Defendants also assert that the statute of limitations bars the Plaintiff from bringing the action.

## DISCUSSION

I. <u>Standard of Review</u>

In ruling on a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all inferences in favor of the plaintiff. *Szumny v. Am. Gen. Fin., Inc.*, 246 F.3d 1065, 1067 (7th Cir. 2001). The purpose of a motion to dismiss is not to decide the merits of the challenged claims but to test the sufficiency of the complaint. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir. 1996). A court will grant a motion to dismiss only if it is impossible for the plaintiff to prevail under any set of facts that could be proven consistent with the allegations. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

II. <u>Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

Whether this Court has subject matter jurisdiction over the present case depends on whether federal question jurisdiction exists. Courts may assert subject matter jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Plaintiff's complaint satisfies this requirement because, even though the USHA and FHA do not provide a private cause of action regarding the maintenance of apartment units, *see infra*, Section 1982 and Title VI do grant such a right. As a result, subject matter jurisdiction is established and the Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is denied. However, the case may only proceed in accordance with Section 1982 and Title VI. Because the USHA and FHA do not create private rights of action to ensure the habitability of apartments, the Plaintiff cannot base her allegations on these two statutes.

A.     42 U.S.C. § 1982

Section 1982 provides that all citizens shall "have the same right . . . as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Essentially, the statute bars all racial discrimination in connection with the sale and rental of property. *Jones v. Alfred Mayer Co.*, 392 U.S. 409, 413, 88 S.Ct. 2186 (1968). Defendants claim that Section 1982 applies only to racially motivated refusals to sell or rent and was not intended to provide individuals with an action to remedy inequities in housing conditions. Contrary to this argument, however, the Seventh Circuit has interpreted *Jones* to mean that Section 1982 should be utilized as a broad based instrument to eliminate all racial discrimination that effects the ownership of property. *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 330 (7th Cir. 1974). In *City of Memphis v. Greene*, 451 U.S. 100, 120, 101 S.Ct. 1584 (1981), the Supreme Court affirmed this notion by holding that Section 1982 is a broad statute aimed at protecting the enforceability of property interests acquired by black citizens and their right to use the property on an equal basis with whites.

The Plaintiff alleges that the Defendants intentionally refused to maintain a safe and sanitary dwelling because of her race. (*Complt.* at ¶ 31.) These alleged actions are within the scope of Section 1982 because courts have construed the statute broadly and rejected limiting it merely to the sale and rental of property. *See, e.g., Jones*, 392 U.S. at 413; *Clark*, 501 F.2d at 330. Courts, as discussed in *Greene*, want to protect black citizens and create a right of action not only with respect to the purchase of property but also with respect to the use of property. Alleged inadequate maintenance of the apartment unit because of the Plaintiff's race, in the form

of mold accumulation and water infiltration, clearly falls within these broad protections. As a result, we find that Section 1982 grants a private right of action and allows a claim to be brought alleging discriminatory practices in the maintenance of an apartment.

B.  Title VI of the Civil Rights Act of 1964

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. It is clear that Title VI does not explicitly grant a private right of action but prior decisions of the Supreme Court have held that an implied cause of action does exist. *See Gonzaga University v. Doe*, 536 U.S. 273, 284, 122 S.Ct. 2268 (2002); *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946 (1979). Congress has even acknowledged this implied right by passing amendments to the statute, making it "beyond dispute that private individuals may sue to enforce" Title VI. *Alexander v. Sandoval*, 532 U.S. 275, 280, 121 S.Ct. 1511 (2001). Additionally, compensatory and injunctive relief, both of which are claimed by the Plaintiff, are available under Title VI because there is a traditional presumption in favor of any appropriate relief for violation of a federal right. *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 70, 112 S.Ct. 1028 (1992).

The Defendants receive federal funds from HUD to provide subsidized low rent housing. (*Complt.* at ¶ 5.) The Plaintiff alleges, however, that, while the Defendants are receiving these funds, they are intentionally discriminating against her, on the basis of race, by refusing to maintain a sanitary apartment. (*Id.* at ¶ 31.) This allegation states a violation of Title VI because, according to the statute, a company cannot engage in discriminatory activity while

5

receiving federal funds. Contrary to Defendants' belief that no implied right of action exists under the statute, clearly precedent and congressional action have established that an individual has a private right of action and can bring a claim to ensure compliance with Title VI. Thus, subject matter jurisdiction has been invoked.

C. United States Housing Act of 1937

The USHA does not create a warranty of habitability or a private right of action regarding the conditions of apartments. The USHA sets forth the national housing goal of realizing "a decent home and suitable living environment for every American family." 42 U.S.C. § 1441. The Seventh Circuit has held, however, that this objective cannot "be interpreted to impose upon HUD or its agent an absolute, fixed obligation to maintain suitable dwellings." *Alexander v. U.S. Dept. of Housing and Urban Development*, 555 F.2d 166, 171 (7th Cir. 1977). The court ruled that a federally enforceable warranty of habitability does not exist because the establishment of congressional objectives is not equivalent to a guarantee that such objectives will be attained. *Id.* The USHA also discusses a goal of remedying "the unsafe and unsanitary conditions and the acute shortage of decent, safe and sanitary dwellings for families of lower income." 42 U.S.C. § 1437. While the Plaintiff alleges that Section 1437 establishes a private right of action on behalf of tenants to ensure the habitability of their apartments, courts in this jurisdiction have already held that no such private right exists. *See, e.g., Thomas v. Chicago Housing Authority*, 981 F. Supp. 558, 561 (N.D. Ill. 1997) (ruling that a claim by tenants under Section 1437 must fail because no private right of action existed); *Hale v. Chicago Housing Authority*, 642 F. Supp. 1107, 1109 (N.D. Ill. 1986).

The Plaintiff alleges that the Defendants violated the USHA by intentionally disregarding

6

complaints concerning the conditions of her apartment unit. In establishing the national housing goal, however, the USHA does not create a warranty of habitability or a private right of action. As a result, the statute cannot confer subject matter jurisdiction and may not be applied further in this case.

D. Fair Housing Act

The FHA also does not create a private right of action to ensure habitability. Section 3604(a) of the FHA makes it unlawful to "refuse to sell or rent after the making of a bona fide offer ... or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). The scope of this section, however, is limited to the refusal to sell or rent housing and thus does not apply once the property has actually been rented. *Southend Neighborhood Improvement Ass'n v. County of St. Clair*, 743 F.2d 1207, 1210 (7th Cir. 1984); *see also Smart Unique Services Corp. v. Mortgage Correspondents of Illinois*, 1994 WL 274962, at *3 (N.D. Ill. Jun. 16, 1994) ("the FHA does not protect 'intangible interest in ... already-owned property.' Thus, to state an FHA claim, the plaintiffs must allege that they were denied the opportunity to buy, rent, or build their own homes"). Because the Plaintiff merely alleged discrimination in the maintenance of her apartment and did not allege discrimination in connection with the renting of her unit, a private right of action under Section 3604(a) is not available.

Section 3604(b) of the FHA makes it unlawful to "discriminate against any person in terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). In ascertaining the scope of Section 3604(b), it is necessary to

determine whether the language "in connection with" refers to the "sale or rental of a dwelling" or just the "dwelling" in general. *See Laramore v. Illinois Sports Facilities Authority*, 722 F. Supp. 443, 452 (N.D. Ill. 1989). The Plaintiff alleges that Section 3604(b) should be given a broad interpretation that would include apartment maintenance and in turn provide a right of action for unsafe housing conditions. In *Halprin v. The Prairie Single Family Homes of Dearborn Park Ass'n*, 208 F. Supp. 2d 896, 901 (N.D. Ill. 2002), however, the court interpreted the language "services or facilities" narrowly and held that if the complaint does not allege discrimination directly relating to the sale or rental of a dwelling, the plaintiff is not entitled to relief. *See also Clifton Terrace Assocs., Ltd. v. United Technologies Corp.*, 929 F.2d 714, 719-20 (D.C.Cir 1991) (the term service in Section 3604(b) means services in connection with the acquisition of housing, not its maintenance; therefore Section 3604(b) does not apply to elevator repair services). Even if this rationale is not accepted and a broader reading is employed, the Seventh Circuit has suggested that Section 3604(b) merely applies to services generally supplied by governmental entities, such as police protection. *See Southend*, 743 F.2d at 1210. Once again, because the Plaintiff did not allege discrimination relating to the acquisition of her apartment, a private right of action under Section 3604(b) is unavailable and as a result subject matter jurisdiction is not established. In sum, neither Section 3604(a) nor 3604(b) of the FHA grants a private right of action and thus the Plaintiff cannot base her allegations on this statute.

## III. Motion to Dismiss for Failure to State a Claim

### A. Retaliatory Eviction

Count VII is dismissed because the Plaintiff has failed to satisfy the elements necessary to

8

establish a claim for retaliatory eviction. The Illinois Retaliatory Act makes it illegal "for a landlord to terminate or refuse to renew a lease or tenancy of property used as a residence on the ground that the tenant has complained to any governmental authority of a bona fide violation of any applicable building code, health ordinance, or similar regulation." 765 ILCS § 720/1. To establish a *prima facie* claim for retaliatory eviction, four elements are necessary: 1) the tenant made complaints to a governmental authority; 2) violations were found; 3) the landlord was notified of the violations; and 4) the tenancy was terminated solely because of the tenant's complaints. *Shelby Co. Housing Auth. v. Thornell*, 144 Ill.App.3d 71, 75, 493 N.E.2d 1109 (5th Dist. 1986).

The Plaintiff allegedly complained to HUD and other governmental authorities about conditions in her apartment, (*Complt.* at ¶ 73), satisfying the first element of a retaliatory eviction claim. However, since an actual eviction has not been asserted, a *prima facie* case has not been established. The Plaintiff maintains that the Defendants attempted to intimidate and harass her by issuing a notice detailing lease violations. (*Id.* at ¶ 75-77.) The notice allegedly stated that the Plaintiff was required to respond to the violations within a certain amount of time or have her lease terminated. (*Id.*) These allegations sufficiently detail the presence of purported harassment, but it does not address the issue of eviction. Nowhere in the complaint does it state that the Plaintiff has actually been evicted from her apartment and, in fact, she alleges that she is presently living in the unit. (*Id.* at ¶ 2.) Again, intimidation and harassment are argued, but this is not adequate to establish a necessary element of the *prima facie* case. As a result of this failure, Count VII is dismissed.

B. <u>Violation of Federal Civil Rights</u>

Even though Section 1982 and Title VI, as stated above, provide a private cause of action for complaints made in connection with maintenance of an apartment, the Defendants assert that Count I should be dismissed because the Plaintiff has failed to a allege that "similarly situated" caucasian tenants were provided with better conditions. *See City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086, 1096 (7th Cir. 1993) (holding Section 1982 was violated because African-American's were denied information about housing readily given to caucasians); *Clark v. Universal Builders, Inc.*, 706 F.2d 204, 207 (7th Cir. 1983) (requiring plaintiffs to identify "similarly situated" caucasians that were treated better); *Lewis v. Northern Trust Co.*, 1992 WL 211069, at *4 (N.D. Ill. Aug. 25, 1992) (dismissing a Section 1982 claim because the plaintiff failed to allege that "similarly situated" caucasians were treated differently). However, when all well-pleaded facts in the complaint are construed in Plaintiff's favor, we find that a civil rights violation has been sufficiently alleged.

The Plaintiff alleges that Section 1982 has been violated because the quality of maintenance of her apartment is not equivalent to that of the un-subsidized rental units, populated by mostly caucasian tenants, that are also owned and operated by the Defendants. (*Complt.* at ¶ 28.) These un-subsidized units are in or near the Harbor Village Apartments and the Plaintiff asserts that, while her apartment is intentionally maintained in an unsanitary manner, the caucasian populated units are generally maintained in a decent, safe and sanitary fashion. (*Id.*) Essentially, the Plaintiff argues that the caucasian-occupied apartments, owned and operated by the Defendants, are maintained in better condition merely because of the occupants' race. Thus, Plaintiff has adequately stated that similarly situated white tenants are provided with

10

better living conditions. Accordingly, the motion to dismiss Count I is denied.

C. <u>Preliminary Injunctive Relief</u>

Count III of the Plaintiff's complaint adequately states a claim for injunctive relief. The standard for a preliminary injunction includes five factors: 1) a reasonable likelihood of success on the merits of the claim; 2) no adequate remedy exists at law; 3) plaintiff will suffer irreparable harm if the preliminary injunction is denied; 4) the irreparable harm plaintiff will suffer without preliminary injunctive relief outweighs the irreparable harm the nonmoving party will suffer if the preliminary injunction is granted; and 5) the impact on persons not directly concerned in the dispute. *Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). The Plaintiff bears the burden of demonstrating the first three elements as a threshold matter and once the threshold is adequately met, the Court then balances the two remaining factors. *Roland Mach. Co. v. Dresser Indust., Inc.*, 749 F.2d 380, 385-88 (7th Cir. 1984). Construing all well-pleaded facts in the Plaintiff's favor, it is evident that a claim for preliminary injunctive relief has been adequately stated. The Plaintiff alleges that she will succeed on the merits, that the legal remedy is insufficient, that irreparable harm will be suffered if the injunction is not granted, and that the harm without an injunction outweighs the potential harm to the Defendants. (*Complt.* at ¶ 52-57.) The Plaintiff does not clearly detail the effect of the injunction on the public interest, but she does adequately satisfy the *prima facie* threshold for injunctive relief. Thus, Count III will not be dismissed.

D. <u>Abnormally Dangerous and Ultra-Hazardous Activity</u>

Count VI will also not be dismissed because the Plaintiff has sufficiently stated a claim for relief. A person or company that engages in an abnormally dangerous activity is strictly liable

11

for ensuing harms. *See G.J. Leasing Co. v. Union Electric Co.*, 54 F.3d 379, 386 (7th Cir 1995) (citing Illinois law). The word "abnormally dangerous" refers to the inherently dangerous characteristics of an activity and does not specifically refer to danger "which arises from mere casual or collateral negligence of others." *Cadena v. Chicago Fireworks Co.*, 297 Ill.App.3d 945, 961, 697 N.E.2d 802 (1st Dist. 1998). An activity is defined as abnormally dangerous if: 1) it creates a high risk or degree of harm; 2) the degree of harm is great; 3) the risk of harm cannot be "eliminated by the exercise of reasonable care;" 4) the activity cannot be one of common usage; 5) the activity must be inappropriate to the place in which it took place; and 6) the benefit to the community derived from the activity must be great enough to offset its unavoidable risks. *Evco Assocs., Inc. v. C.J. Saporito Plating, Co.*, 1993 WL 348691, at *5 (N.D. Ill. Sep. 7, 1993) (citing Restatement (Second) of Torts § 520 (1979)); *see also Cadena*, 297 Ill.App.3d at 961 (court applied the six factor test and held that a fireworks display is not an abnormally dangerous or ultra-hazardous activity).

The Plaintiff has sufficiently set forth the necessary elements to establish a claim for abnormally dangerous and ultra-hazardous activities. Plaintiff not only alleges that the Defendants have engaged in abnormally dangerous activities such as allowing unclean water to infiltrate into the units and permitting mold to propagate in the apartments they own and operate, but also that the danger is inherent in the units themselves and does not arise from the mere casual negligence of others. The Plaintiff further asserts that no degree of care can truly provide safety if the Defendants continue to rent the apartments in their abnormally dangerous condition because of the risk to human health that has been created by the presence of mold and other hazards. (*Complt.* at ¶ 71-72.) As a result of these allegations, a claim has been stated and Count

VI is not dismissed.

E. <u>Statute of Limitations</u>

Plaintiff's complaint is not barred by the statute of limitations. When a federal civil rights statute, like Section 1982, fails to set forth a specific statute of limitations, courts routinely apply the statute of limitations for tort actions in the state of Illinois, which is two years. *Cathedral of Joy Baptist Church v. Village of Hazelcrest*, 22 F.3d 713, 716 (7th Cir. 1994); *Smith v. City of Chicago Heights*, 951 F.2d 834, 839 (7th Cir 1992). Thus, the statute of limitations for all of the Plaintiff's federal claims is two years. Furthermore, according to the "discovery rule", which is utilized in federal question cases, the two year statute of limitations begins when a party discovers an injury. *Cathedral of Joy Baptist Church*, 22 F.3d at 717. In the instant case, testing was conducted in August 2002 and the results allegedly confirmed the existence of unsafe and unsanitary conditions at the Harbor Village Apartments. While the Plaintiff alleges that the unlawful conduct was taking place prior to this, the testing provided previously undiscovered tangible evidence. Therefore, Plaintiff is not time barred from bringing the complaint.

## CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss is granted in part and denied in part. The 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is denied because both Section 1982 and Title VI create a private cause of action regarding discrimination in apartment maintenance. Accordingly, we will exercise our supplemental jurisdiction over the state law claims of negligence (Count II), willful and wanton conduct (Count IV) and nuisance (Count V) pursuant to 28 U.S.C.S. § 1367(a). Count VII for retaliatory eviction is dismissed

pursuant to Rule 12(b)(6). We order the Plaintiff to file an amended complaint by August 28, 2003 in accordance with the order.

It is so ordered.

									_____
									Wayne R. Andersen
									United States District Court

Dated: July 31, 2003